*E-filed: September 26, 2012*

**United States District Court**
For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LUIS SANDOVAL; ISREAL RODRIGUEZ; CESAR MARTINEZ, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>AB LANDSCAPING, INC., et al.,<br><br>　　　　　　　Defendants.<br>_____/ | No. C09-04969 HRL<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARDING ATTORNEY FEES, and AUTHORIZING DISTRIBUTION AND CY PRES PAYMENT**<br><br>**[Re: Dkt. Nos. 69, 72]** |

　　　　Luis Sandoval ("Sandoval"), Israel Rodriguez ("Rodriguez"), and Cesar Martinez ("Martinez") (collectively, "Named Plaintiffs" or "Class Representatives") move for Final Approval of a class action settlement, an order for distribution and *cy pres* payment, and attorney's fees and costs. (Dkts. 69, 72).

**I.　　BACKGROUND**

　　　　Named Plaintiffs[1] brought this putative class action in October 2009 and filed an amended complaint in April 2010. Named Plaintiffs claim that their former employer, AB Landscaping, and its owner, Victor Arellano, ("Defendants") failed to properly pay overtime wages and provide adequate pay statements. Based on these allegations, they brought claims under the California

---

[1] When the action was initially filed, Ricardo Jimenez, but not Cesar Martinez, was a named plaintiff. Martinez was added as a named plaintiff with the first amended complaint in April 2010. The Court severed the claims of Jimenez in March 2011 because Jimenez did not agree to the settlement agreement reached between the parties.

Labor Code, the Federal Fair Labor Standards Act, and the California Business and Professions Code.

In February of 2011, the parties reached a settlement agreement.  In April of 2011, the parties moved for an order certifying the tentative settlement class, preliminarily approving the proposed settlement, approving and directing the notice plan, appointing class counsel, and approving settlement administrator (Dkt. 59) ("Joint Motion").  The motion included the original Joint Stipulation of Settlement and Release ("Settlement Agreement"), as well as proposed notice, claim, and opt-in forms (Dkt. 60-1).

The Court held a hearing on the Joint Motion.  Based on the Court's comments during the hearing, the parties submitted revised notice, claim, and opt-in forms.  The Court made further revisions to the newly submitted forms and attached the proposed revisions to an Interim Order, instructing the parties to submit comments or proposed revisions within seven days (Dkt. 64).  The parties submitted no comments or proposed revisions.

The Court held a further hearing on the Joint Motion.  In response to this hearing, the parties submitted a joint letter concerning the *cy pres* procedure outlined in the Settlement Agreement.  The Court granted the Joint Motion in September 2011 (Dkt. 68).  The Court attached a Notice of Class Action Settlement and Settlement Hearing, a Claim Form, and an Opt-in Form to the order approving the Joint Motion ("Notice and Claims Process Documents") (Dkts. 68-1, 68-2, 68-3).  The order granting the Joint Motion specifically approved the form and substance of the notice procedures set forth in the Notice and Claims Process Documents, over any contradictory terms in the Settlement Agreement.

After entry of an order on the Joint Motion, class counsel moved for attorney's fees and costs (Dkt. 69).  Shortly thereafter, the Named Plaintiffs moved for final approval of the class action settlement and for an order for distribution and *cy pres* payment (Dkt. 72).  The Court held a final fairness hearing in February 2012.  The moving parties appeared at that hearing and were heard by the Court.  Despite the opportunity to object, outlined in the Notice and Claims Process Documents, no one did.  Counsel for Class Representatives submitted a Proposed Order of Final Approval of Class Action Settlement in August 2012.

1

2      II.      **DISCUSSION**

3              **A.  Jurisdiction**

4              This Court finds that it has jurisdiction over the claims the members of the class asserted in

5      this proceeding, personal jurisdiction over the settling parties (including all members of the

6      settlement class), and subject matter jurisdiction to approve the Settlement Agreement filed with this

7      Court.

8              **B.  Class Definition**

9              The parties agreed to certification of a Settlement Class that included all employees of

10     Defendants who were employed on an hourly basis between October 20, 2005 and April 1, 2011.

11     The class members are identified in Exhibit 1 to the parties' Settlement Agreement ("Settlement

12     Class" or "Class Members").

13             **C.  Terms of the Settlement Agreement**

14                  **1.  Relief Offered**

15             The Notice of Class Action Settlement and Settlement Hearing gave Class Members five

16     options.  First, they could make a claim.  This would entitle the Class Member to unpaid wages

17     owed and a share of corresponding penalties under the California Labor Code.  To exercise this

18     option, Class Members had to complete and mail in the Claim Form.  Second, they could opt-in for

19     liquidated damages under the FLSA.  This would entitle them to receive additional money in

20     settlement of their claims for liquidated damages under the FLSA.  To exercise this option, Class

21     Members had to complete and mail in an Opt-In Form.  So, Class Members could send in a Claim

22     Form (for the full amount of their unpaid wages and a share of penalties under the state labor code)

23     and an Opt-In Form (for a share of liquidated damages under the FLSA).  Third, Class Members

24     could request to be excluded from the settlement.  To do this, they had to submit a written request

25     for exclusion indicating their intent to be excluded from the settlement.  Fourth, Class Members

26     could object, either personally or through an attorney.  Objections needed to be signed writings,

27     filed with the court and mailed to Class Counsel.  Those who objected were also invited to attend

28     the fairness hearing and present their objections.  Finally, Class Members could do nothing.  By

**United States District Court**
For the Northern District of California

3

doing nothing, Class Members lost their right to bring suit for unpaid wages and the corresponding penalties under the California Labor Code, but they would not lose their right to pursue liquidated damages under the FLSA.

Under the Settlement Agreement, the Defendants pay a total of $324,068.99 to fully resolve the lawsuit.  A portion of this amount ($172,482.86) was already distributed to 34 Class Members for payment of their unpaid wages ("Distributed Funds").  The remaining amount ($151,586.13) will be distributed as follows:

- First, $22,744.78 will be set aside to pay Class Members who did not receive Distributed Funds for unpaid wages. The amount of unpaid wages owed to these Class Members was calculated based on an audit of payroll and time records.  The amount of unpaid wages owed to each individual Class Member was set forth in their Claim Form;

- Second, Class Representatives Luis Sandoval, Israel Rodriguez and Cesar Martinez will be paid $10,000, $10,000, and $5,000, respectively, for their services as the Class Representatives.

- Third, Defendants will pay their statutorily-required matching contributions on the wage portion of the settlement amount;

- Fourth, attorney's fees not to exceed $80,000 and costs not to exceed $10,000 will be paid to Plaintiffs' counsel Adam Wang.

After paying the above amounts, 80% of the remaining amount will be distributed to Class Members who timely submitted the Opt-In Form to settle their claims for liquidated damages under the FLSA; and 20% of the remaining amount will be distributed to all Class Members who timely submitted a Claim Form for penalties under the California Labor Code.

## 2. Scope of Release

The Settlement Agreement resolves the Class Members' claims for unpaid wages (including overtime) and penalties under the California Labor Code, that were alleged or that reasonably arise out of the facts alleged in the First Amended Complaint (Dkt. 11).  Only those Class Members who signed and returned the Opt-In Form released claims for liquidated damages under the FLSA.  The Settlement Agreement does not release any claims a Class Member may have to vested benefits pursuant to any AB Landscaping Inc. employee benefit plan or under the California workers compensation laws.

4

**United States District Court**
For the Northern District of California

### 3. Payment to the Class Representative

As described above, Class Representatives Sandoval, Rodriguez and Martinez will be paid $10,000, $10,000, and $5,000, respectively, for their services as the Class Representatives.  In light of this payment, they will not receive money in settlement of their claims for penalties under the California Labor Code.

### 4. Distribution and Cy Pres Payment

Because not all Class Members submitted a Claim Form, the wages owed to those Class Members ("Cy Pres Funds") will be paid to the **Pro Bono Project Silicon Valley at 480 N. First Street, San Jose, CA, 95112**.  Although the Settlement Agreement lists the California Bar Association as the Cy Pres recipient, at the Final Fairness hearing, and as set forth in the Proposed Order of Final Approval of Class Action Settlement, the parties agreed that Cy Pres Funds will be paid to the Pro Bono Project Silicon Valley (*see* Proposed Order of Final Approval of Class Action Settlement, Dkt. 75, ¶ 10).  Accordingly, **despite the designation in the Settlement Agreement, the Pro Bono Project Silicon Valley is the Cy Pres recipient .**

### 5. Attorney's Fees

The Settlement Agreement provided for a maximum award of $80,000 in attorney's fees and $10,000 in costs.  Class Counsel's motion for fees and costs is discussed below in section II.F.

### 6. Settlement Administration

Under the Settlement Agreement, the parties agreed to appoint Class Counsel as Settlement Administrator for purposes of issuing Claim Forms, independently reviewing the Claim Forms and documentation associated with the computation of Class Members' *pro rata* shares of the Settlement Fund, verifying any amounts due to qualified claimants, mailing out settlement checks, and issuing W-2s and 1099 forms.

### D. Notice to the Class

This Court preliminarily approved the notice procedure set forth in the Notice and Claims Process Documents, which were attached to the Court's order approving the Joint Motion (Dkt. 68-1, 68-2, 68-3).  The Notice of Class Action Settlement and Settlement Hearing form adequately

described the Settlement Agreement, the request for incentive payments to the Named Plaintiffs, and Class Counsel's request for an award of attorney's fees and costs.

Based on an audit of payroll and time records, Defendants identified approximately 67 potential Class Members. After the Court approved the Notice and Claims Process Documents, Defendants sent the forms via First Class Mail to the last-known address of each of the Class Members. Class Counsel mailed both English and Spanish versions of the Notice and Claims Process Documents to Class Members. When some of the forms came back to Defendants as undeliverable, Defendants used a people-finder website to identify alternative addresses.

The deadline for mailing a Claim Form or Opt-In Form was January 13, 2012. As of February 2012, 17 Class Members had either filed a Claim Form, a FLSA Opt-In Form, or both.[2] Although this number seems low, the Court does not find this return rate to be unusually low.

The Court concludes that the notice was reasonably calculated under the circumstances to apprise Class Members of the pendency of this action and all material elements of the Settlement Agreement. It provided the opportunity for Class Members to exclude themselves from, object to, or comment on the Settlement Agreement and to appear at the Final Fairness Hearing on their own behalf or through counsel. This notice satisfied both Federal Rule of Civil Procedure 23(c)(2)(B) (certification notice requires "the best notice that is practicable under the circumstances") and Rule 23(e)(1) (settlement notice must be directed "in a reasonable manner to all class members who would be bound").[3] It also properly informed class members of the amount of attorney's fees requested by Class Counsel as required by Federal Rule of Civil Procedure 23(h)(1). Notice given was due, adequate, and sufficient. It complied with the requirements of Fed. R. Civ. P. 23, due process, and any other applicable rules of the court.

### E. Motion for Final Approval

---

[2] Defendants received ten Claim Forms and 13 Opt-In Forms for liquidated damages under the FLSA. Defendants did not receive any requests to be excluded from the settlement. Neither the Court nor Defendants received any objections to the settlement.

[3] In class-action settlements, it is common practice to provide a single notice program that satisfies both of these notice standards. *See* DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.31 (4th ed. 2005).

**United States District Court**
For the Northern District of California

The parties jointly moved the Court to resolve this case as a Settlement Class.  In order to certify a Settlement Class, the requirements of Rule 23 must generally be satisfied.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997)).  However, in assessing Rule 23 requirements in the settlement context, a court may consider that there will be no trial.  See Amchem, 521 U.S. at 620 ("court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### 1.  Final Certification of Settlement Class

### a.  Requirements of Rule 23(a)

For certification of a settlement class, Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  In granting preliminary approval of the Settlement Agreement, this Court held that the requirements of Rule 23(a) were met.

**Numerosity**.  The class here, consisting of approximately 67 class members, meets the numerosity requirement, as joinder of all members would be impractical.  Fed. R. Civ. P. 23(a)(1).

**Commonality**.  Further, this case involves common issues of fact and law for the class arising out of the alleged wage and hour violations committed by Defendants.  Fed. R. Civ. P. 23(a)(2).

**Typicality**.  The claims of the Named Plaintiffs are typical of the Class Members, and arise out of the alleged wage and hour violations committed by Defendants.  Fed. R. Civ. P. 23(a)(3).

**Adequacy**.  Finally, with respect to legal adequacy, two questions must be resolved: (1) do the Named Plaintiffs and Class Counsel have any conflicts of interest with other Class Members and, (2) have the Named Plaintiff and Class Counsel vigorously prosecuted the action on behalf of the class?  See Hanlon, 150 F.3d at 1020.

First, Named Plaintiffs and their counsel do not have conflicts of interest with other Class Members that would defeat adequacy of representation in the context of the proposed Settlement Class and the notice provided.  Each Class Member will receive a fixed sum that represents all of his unpaid overtime worked, and members who Opt-In to settle their FLSA claims will receive a *pro rata* share of the residual settlement fund for their liquidated damages and penalties available to

1  them.  See Hanlon, 150 F.3d at 1021 (adequacy was met when the settlement was "narrowly

2  circumscribed" and each class member was treated identically; "[g]iven these careful precautions

3  and safeguards, no improper conflict of interest existed").

4       As to the second question, Named Plaintiffs and their counsel have shown appropriate vigor

5  in prosecution of the class claims.  Named Plaintiffs' counsel has declared that he conducted the

6  initial factual investigation and engaged in several mediation sessions on behalf of the class.  See

7  Docket No. 60 ("Wang Decl.").  Named Plaintiffs' counsel also has sufficiently shown that he is

8  qualified to litigate this action and is experienced in numerous wage-and-hour class actions.  See id.

9  Accordingly, the Court is satisfied that Named Plaintiffs and their counsel are adequate

10  representatives of the tentative Settlement Class under Rule 23(a)(4).  See Hanlon, 150 F.3d at 1022

11  (finding "counsel's prosecution of the case sufficiently vigorous to satisfy any Rule 23(a)(4)

12  concerns").  Therefore, all of the requirements of Rule 23(a) are satisfied.

13                    **b.  The Requirements of Rule 23(b)(3)**

14       For certification under Rule 23(b)(3), a class action must meet two additional requirements:

15  (1) common questions must "predominate over any questions affecting only individual members;"

16  and (2) class resolution must be "superior to other available methods of fair and efficient

17  adjudication of the controversy."  Amchem, 521 U.S. at 615; Fed. R.Civ. P. 23(b)(3).  With respect

18  to Rule 23(b)(3), the requirements of predominance and superiority are intended to cover cases "'in

19  which a class action would achieve economies of time, effort, and expense, and promote . . .

20  uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or

21  bringing about other undesirable results.'"  Amchem, 521 U.S. at 615.

22       **Predominance**.  In this case questions of law or fact common to Class Members concerning

23  the alleged wage and hour violations predominate over any questions affecting only individual

24  members.

25       **Superiority**.  This Court also holds that the tentative Settlement Class is superior to

26  individual lawsuits.  Any concern that aggregation of claims for trial could bring about the

27  undesirable result of damages disproportionate to Defendants' conduct simply is not applicable here

28  in the context of the proposed Settlement Class, where the relief is agreed upon and no trial will

occur.  See Amchem, 521 U.S. at 619-20.  On the other hand, the amount awarded to each

individual Class Member is based on the amount of unpaid wages owed to that particular individual

Class Member.  Consequently, the Court finds that the requirements of Rule 23(b)(3) are met by the

proposed Settlement Agreement.

Finding the requirements of Rule 23(a) and 23(b)(3) satisfied, the court confirms and

approves the Settlement Class certification.

### 2.  Final Approval of the Settlement Agreement

This court may approve the class action settlement after hearing and upon a finding that the

settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Therefore, the question is

"not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate,

and free from collusion."  Hanlon, 150 F.3d at 1027.  Further, it is "the settlement taken as a whole,

rather than the individual component parts, that must be examined for overall fairness."  Id. at 1026.

A settlement under Rule 23(e) requires that the Court balance a number of factors, including:  (1)

the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in

settlement; (5) the extent of discovery completed; (6) the experience and views of counsel; (7) the

presence of a governmental participant; (8) the reaction of the class members to the proposed

settlement; and (9) the absence of collusion in the settlement procedure.  Churchill Vill., LLC v.

Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); Hanlon, 150 F.3d at 1026.  The relative importance

of each factor is left to the sound discretion of the Court.  See 5 Moore's Federal Practice, § 23.85(2)

(a).  "Not all of these factors will apply to every class action settlement.  Under certain

circumstances, one factor alone may prove determinative in finding sufficient grounds for court

approval."  National Rural Telecommunications Cooperative v. DIRECTV, Inc., 221 F.R.D. 523,

525 (C.D. Cal. 2004).

### a.  The Strength of The Plaintiffs' Case

The Class Members' claims appear to be strong, but the Settlement Agreement reflects the

strength of these claims.  The Settlement Agreement provides each Class Member with the full

amount of unpaid wages plus an amount for penalties and liquidated damages under the California

Labor Code and/or the FLSA. Although the amount for penalties and liquidated damages is compromised, the solvency of Defendants and the fact that the Class Members do not pay attorney's fees out of their entitlement were appropriately factored into the compromise.

**b.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Further litigation in this case would threaten to deplete the Class Members' source of recovery funds and could result in a recovery less than the amount agreed to in the Settlement Agreement. As mentioned above, the Settlement Agreement provides for full recovery of the unpaid wages for Class Members and, Defendants asserts that an increase in the award of fees would threaten the solvency of AB Landscaping Inc.

**c.   The Risk of Maintaining Class Action Status Throughout Trial and the Amount Offered in Settlement**

The Court does not perceive great risk in maintaining class action status throughout trial, though this factor does not upset the reasonableness of the settlement reached. The amount offered in settlement constitutes full payment of all unpaid wages due to the Class Members. The Class Members receive this full payment, plus an amount for penalties and fees, and the Class Members do not have to pay attorney's fees.

**d.   The Extent of Discovery Completed**

When litigation has proceeded to the point where the parties have a "clear view of the strengths and weaknesses of their cases," this factor supports approval of a settlement. Young v. Polo Retail, LLC, 2007 WL 951821, *4 (N.D. Cal. Mar. 28, 2007). Here, Class Counsel conducted discovery to determine how many individuals belonged to the class. Class Counsel then reviewed the Class Members' time cards and payroll records. Through an audit of these records, Class Counsel determined the amount of unpaid overtime for each individual Class Member. So, Class Counsel conducted discovery to determine the amount of unpaid overtime owed to each individual Class Member. These amounts form the basis of the Settlement Agreement. The parties reached a settlement before going to trial. This factor weighs in favor of approving the Settlement Agreement because the parties conducted enough discovery to determine the amount of unpaid wages owed to each Class Member.

1

**e.  The Experience and Views of Counsel**

2       In considering the experience and views of counsel, the Court finds that the settlement in

3  this case is the product of arm's length negotiations that were conducted by capable counsel who are

4  experienced in class action litigation.  Counsel for both sides believe that the Settlement Agreement

5  reflects the relative strengths and weaknesses of the parties' respective claims and defenses, as well

6  as the risks presented in continuing the litigation and the realities of Defendants' financial situation.

7  The experience and views of counsel weigh in favor of approval.

8

**f.  The Presence of a Governmental Participant**

9       Notice of the Settlement Agreement was not sent to the state or federal Attorney General's

10  office.  This factor therefore weighs against final approval of the Settlement Agreement, but the

11  Court does not find that it warrants a rejection of the Settlement Agreement.

12

**g.  The Reaction of the Class Members to the Proposed Settlement**

13      The next factor that the court must consider is the reaction of the class to the proposed

14  settlement.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  No Class Members

15  have sought to opt out of the Settlement Agreement, and no Class Member has objected.  The

16  reaction of the Class Members to the proposed settlement supports the conclusion that the

17  Settlement Agreement is fair, reasonable, and adequate.

18

**h.  The Absence of Collusion in the Settlement Procedure**

19      This court will now consider the procedure through which the settlement was reached in

20  order to satisfy itself that the settlement was not the product of collusion. See Young, 2007 WL

21  951821, at *3; Churchill Vill., 361 F.3d at 576-77.  Here, the parties participated in an early ADR

22  phone conference and decided to participate in Early Neutral Evaluation ("ENE").  The parties

23  reached a partial settlement during an initial ENE session and participated in a follow-up ENE

24  session before completing the ENE process.  The parties also participated in a mediation.  About a

25  month after completing the ENE process, the parties reached a settlement.  That agreement was the

26  product of arms-length negotiation lasting about five and a half months by the time the parties

27  moved for preliminary approval of the settlement.  Accordingly, the Court finds that the settlement

28

11

1 procedure was without collusion; this factor weighs in favor of approving the Settlement

2 Agreement.

**F.  Motion For Attorney's Fees and Costs**

4 Also before the Court is Class Counsel's motion for attorney's fees and costs (Dkt. No. 69).

5 The motion seeks fees in the amount of $80,000 and costs in the amount of $3,832.77.  The request

6 comports with the Settlement Agreement, which required Class Counsel to apply to the Court for

7 lodestar fees based on actual hours worked and costs, the fee request not to exceed $80,000 and the

8 request for costs not to exceed $10,000.  Because the Settlement Agreement allowed a maximum

9 cost award of $10,000, and Defendants only spent $3,832.77 in costs, Class Counsel asked that the

10 remaining $6,167.23 be added back to the funds to be distributed to Class Members who have

11 submitted Claim Forms and Opt-In Forms.

**1.  Lodestar Comparison**

13 The motion for attorney's fees is supported by a declaration and detailed, contemporaneous

14 time records.  The declaration and records establish that class counsel spent 282 attorney hours and

15 84.5 staff hours on this litigation and that it incurred $3,832.77 in actual expenses (Dkt. Nos. 70, 70-

16 1, 70-2).  Lead Class Counsel, Mr. Adam Wang, listed his rate as between $330/hour and

17 $435/hour.  Ms. Rosita Natusch, a legal secretary and translator, listed her rate as $150/hour.  In

18 support of these rates, Class Counsel submitted a "Laffey Matrix" from the District of Columbia.

19 After reviewing the detailed breakdown of the billable time, the Court finds the hours recorded by

20 Class Counsel to be reasonable.  These hours, multiplied by the rates suggested by Class Counsel,

21 yield fees in the amount of $126,389.  Though the Court is not entirely convinced that the Laffey

22 Matrix from the District of Columbia supports the rates suggested by Class Counsel for this case,

23 the Court is convinced that $80,000 is a reasonable amount of total fees.  This amount is

24 significantly lower than the fees generated by Class Counsel's records and it is the amount agreed to

25 in the Settlement Agreement.[4]

26 _____

27 [4] The Court also finds this lower amount to be appropriate given several inconsistencies or entry errors found in the records submitted to the Court.  For example, in the entry for 1/30/10, both Wang

28 and his legal assistant Natusch charged $420/hour for the same meeting.  Wang billed 1.25 hours for "Meeting clients discussing the uncertainty re employee status of Israel Rodriguez and inability to assert civil penalties for waiting time penalty," and Natusch also billed 1.25 hours at a rate of

12

**United States District Court**
For the Northern District of California

### 2.  Percentage-of-the-Fund Comparison

The reasonableness of the requested fee is further supported by a percentage-of-recovery analysis.  Ninth Circuit courts "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."  In re Bluetooth Headset Products Liability Litig., 654 F.3d 935, 942 (9th Cir. 2011).  Here, 25% of the $324,068.99 Settlement Fund amounts to $81,017.25, just over the amount requested by Class Counsel.  Accordingly, the fee request is supported by both the lodestar comparison and the percentage-of-the-fund comparison.  The Court finds that an award of $80,000 in attorney's fees is reasonable.

### 3.  Costs

In its motion for fees and costs, Class Counsel initially requested reimbursement for costs in the amount of $3,832.77 (Dkt. 69).  In support of this request, Class Counsel submitted a Declaration and invoices (Dkt. 70, 70-2).  The Court finds that Class Counsel's initial request is adequately supported.  The Court also grants Class Counsel's request to direct the remaining $6,167.23 allocated for costs to be added back to the Settlement Fund for distribution to Class Members.[5]

**CONCLUSION**

Class Counsel's Motion For Mandatory Award of Attorney Fees and Costs (Dkt. 69) and Named Plaintiffs' Motion For Final Approval of Class Action Settlement and An Order For Distribution and Cy Pres Payment (Dkt. 72) are GRANTED according to the following terms:

---

$420/hour for the translation of same.  The Court finds the rate of $420/hour for translation work to be too high.  While most time entries for Natusch are billed at $150/hour, entries dated 9/7/09, 1/30/10, 2/9/11, 2/14/11, 2/15/11 and 2/18/11 are also erroneously billed at attorney rates of either $330, $420, or $430/hour (Dkt. 70-1, pp. 1, 4, 17, 18, 19, 21).

[5] About two weeks after making the request for costs in the amount of 3,832.77, Class Counsel filed a motion for final approval of the class actions settlement and order for distribution and *cy pres* payment, in which it asked the Court to award Class Counsel a total of $86,167.23 in fees and costs.  Class Counsel submitted no support for its request for an additional $2,334.46 in costs and this appears to by a typographical or calculation error as $86,167.23 amounts to the requested attorney's fees plus the amount of allocated but *unused* costs, which Class Counsel had previously requested be added back to the Settlement Fund.  Creating further confusion, in the Proposed Order of Final Approval of Class Action Settlement, filed six months later, Class Counsel stated that he "now only seeks $5,226 [in costs]" (Dkt. 75).  Because Class Counsel has only provided support for his initial request of $3,832.77 in costs, the Court will award Class Counsel $3,832.77 in costs.  The remaining amount initially allocated for costs shall be added to the Settlement Fund for distribution to Class Members.

**United States District Court**
For the Northern District of California

(1) The Court designates Luis Sandoval, Israel Rodriguez, and Cesar Martinez as Class Representatives, and Adam Wang, Esq. as Class Counsel;

(2) The Settlement Agreement is expressly incorporated herein by reference, and the Court directs the parties to implement it, except that **the *Cy Pres* recipient shall be the Pro Bono Project Silicon Valley**, located at 480 N. First Street, San Jose, CA, 95112;

(3) For purposes of settlement, the Settlement Class shall consist of all hourly employees who were employed during the period from October 20, 2005 to April 1, 2011 by defendant AB Landscaping Inc.  However, only those Class Members who signed and returned the Opt-In Form released their claims under the FLSA;

(4) The settlement set forth in the Settlement Agreement is fair, reasonable, and adequate under applicable state and federal laws;

(5) The notice provided to Class Members complied with the requirements of Fed. R. Civ. P. 23, due process, and any other applicable rules of the court;

(6) The Settlement Fund will be dispersed in accordance with the Settlement Agreement as detailed below:

• The Defendants pay a total of $324,068.99 to fully resolve the lawsuit.  A portion of this amount ($172,482.86) was already distributed to 34 Class Members for payment of their unpaid wages ("Distributed Funds").  The remaining amount ($151,586.13) will be distributed as follows:

a. $22,744.78 ("Unpaid Wages Fund") will be set aside to pay Class Members who did not receive Distributed Funds for unpaid wages.  For those Class Members who did not timely Opt-In or file a Claim Form, Class Counsel shall hold their respective amounts due in trust, until the statute of limitations to assert restitution claims for wages has run;

b. After the statute of limitations to assert restitution claims for wages has run, unclaimed funds from the above Unpaid Wages Fund will be remitted to the **Pro Bono Project Silicon Valley**, located at 480 N. First Street, San Jose, CA, 95112. As the individual statute of limitations run, Class Counsel shall submit proof of payment to the Court.

c. Class Representatives Luis Sandoval, Israel Rodriguez, and Cesar Martinez are awarded $10,000, $10,000 and $5,000 respectively, for their services as the Class

14

Representatives.  In light of this payment, they will not receive money in settlement of their claims for penalties under the California Labor Code;

    d.   Defendants will pay their statutorily-required matching contributions on the wage portion of the settlement amount;

    e.   Attorney's fees in the amount of $80,000 and costs in the amount of $3,832.77 will be paid to Class Counsel Adam Wang.

    f.   After paying the amounts listed in (a)-(e) above, 80% of the remaining amount will be distributed to Class Members who timely submitted the Opt-In Form to settle their claims for liquidated damages under the FLSA; and 20% of the remaining amount will be distributed to all Class Members who timely submitted a Claim Form for penalties under the California Labor Code.

    g.   This case is DISMISSED WITH PREJUDICE, although the Court retains jurisdiction over this matter until all the settlement monies have been disbursed. Each party to bear his own costs, except as set forth herein.

**IT IS SO ORDERED.**

Dated: September 26, 2012

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**United States District Court**
For the Northern District of California

15

United States District Court
For the Northern District of California

1

**C09-04969 HRL** N**otice will be electronically mailed to:**

2

Adam Wang: adamqwang@gmail.com, evanrhy@gmail.com, jenniferxyzheng@hotmail.com, rosilenda@gmail.com

3

Adam Lee Pedersen: alpedersen@gmail.com

4

Roger Mark Mason: rmason@smwb.com, chilton@smwb.com

5

6

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28